The opinion of the court was delivered by
Manning, C. J.
Several pieces of real estate in New Orleans, belonging to Joseph Girod in 1877, were assessed in that year at $23,500.00. No reduction of that assessment was applied for. In June 1878, Canton, the relator, foreclosed a mortgage he held on the property, and purchased it at the sale for $10,700.00. In the following month he applied to the board of assessors for a reduction of the assessments so as to conform to the value as shewn by the price of adjudication. The Board refused, whereupon he demanded that it should appoint an appraiser, to act with another to be appointed by himself, who together should fix the cash value of the property. .This was also refused, and this application for a mandamus has for its purpose to compel the board of assessors to do what he had demanded. The judgment of the lower court sustained the respondent in its refusal.
The question presented is, whether an assessment of real estate, made in 1877 for four years under the statute of that year, not complained of then, can be changed thereafter during the four years, except to make proper subtraction for destruction, pr proper addition for improvements, made after the assessment.
*807 This statute enaets that property shall be assessed once in every four years, but there shall be au annual assessment of personal property, and a revision of the assessment rolls for the purpose of indicating thereon all changes in the ownership of real property, and of deducting therefrom the value of all property lost or destroyed, as well as to add all increased value resulting from new improvements ; and the assessor, in making his revision, shall take note of changes in value produced by the opening or closing of crevasses, or by any fortuitous event which has occurred since the time the first assessment was made. Sess. Acts 1877, p. 137. The rolls thus made shall serve as a basis for all State and eity taxation for the year for which they were made and for three years thereafter, except that annually the assessor shall re-assess movable property, and shall make proper deductions for the destruction of any property and proper additions for improvements. Ibid. p. 155.
Another act was passed in the following year, amendatory of the previous one, (Sess. Acts 1878, p. 231) and the relator bases his right to relief upon the provisions of the two construed together, as well as upon the fact that he was not the owner of the property in 1877, and could not therefore apply for a reduction of the assessment made in that year at the time of the exposure of the rolls. He argues that when the Act of 1878, which took effect at once, “ declared in its 1st. section that all real estate should be estimated by the Assessor at its cash value, and provided a new mode of obtaining the correction of assessments, and granted the officer acting for the State the right of appeal to the Courts, that Act meant that the Assessors should proceed in 1878 to make new assessments of real estate conformably to its provisions, and should allow the tax-payers and the State relief against over or under valuations in conformity with its provisions. Hence, sec. 90 of the Act of 1877 is to be construed so as to harmonize with sec. 1st. of the Act of 1878.”
The 1st. section of the Act of 1878 is an exact transcript of the 15th. section of the Act of 1877, except that the provision touching personal property and capital is contained in a separate and intercalated sentence. The several provisions for the estimation of real property at its cash value, for a new mode of obtaining the correction of assessments, and for an appeal to the courts, are common to both Acts. The act of 1878 did not originate them. The first sixteen sections of that act are occupied solely with amendments of the law of the previous year, reciting the several sections to be amended numerically, and the 17th. sec., upon which the relator lays great stress, which gives to the assessor the right' of appeal to the courts only accords to the one party the right that had already been granted to the other.
The relator further argues that the 19th. section of the act of 1878 *808 must mean that the assessors were to proceed to make such changes on the roll of 1877 as,he has demanded, and such as the tax-payers might shew themselves entitled to, or its language is unmeaning.
This construction comes of the fault of reading that section by itself, and of interpreting it to suit the necessities of his case.
The first seventeen sections of the Act have already been adverted to. The 18th. section assumes that there are persons and corporations, whose property has not been assessed for years by either city or State, “ because of some irregularity, informality, or omission of the assessors,” and then provides that the City Council shall require the board of assessors to proceed to assess or re-assess such omitted property. On the completion of this assessment of hitherto unassessed property, notice is to be given to the party liable who shall have thirty days to examine and obtain its correction “ in the manner now provided by law by application and arbitration upon these assessments.” Then follows the 19th. section, that the assessors shall immediately after the passage of this Act make such revision and correction of the assessment made in 1877 as may be necessary, and shall transmit this corrected assessment to the proper officers — manifestly referring solely to the assessment of hitherto unassessed property, and to the corrections necessitated by destructions or improvements.
The two Acts harmonize. Construing them together, it is apparent a new assessment of real property was not contemplated for 1878, but that all property hitherto omitted from the rolls should be placed thereon at once, and the same opportunity should be given for correction of its assessment as had been given in the original formation of the rolls, and that deductions for destroyed property and additions for improvements should be made every year.
The time within which assessments may be renewed is wholly within legislative discretion. The practice of making annual assessments of real estate has prevailed so long in thi.s State that many, unaccustomed to any other system, think it a grievance to change it. But in truth such a system is very unusual. Ten years was the duration of such assessments in the old States, and still is in some of them. Unquestionably hardships are produced by a term even of four years. The changes in value may be very great in that time, but that consideration can be addressed only to the discretion of the legislature. Cooley Const. Lim. 513.
It is impossible to make a system of assessment and taxation that shall be practically wholly just. The selection of a particular day in any year as the time for fixing value, or for final closing of the rolls, will often produce injustice. Values may change in less than a year, but necessity requires that a day should be fixed unalterably. The machinery, *809 by which assessments of property for taxation are made, is a cumbrous and many-jointed suit of armour for the protection of the revenue of the body politic. All that legislation can do is to increase its flexibility so that attrition will be diminished as much as possible.
In answer to the prima facie case of the relator for a reduction, as exhibited by the sum for which the property sold, the respondent asserts that the relator loaned $15,000.00 on this property the year before he bought it, and hence the price given by the mortgage creditor at such a sale is not a fair criterion of value. We do not consider the question of value at all. We have dealt alone with the right of a property owner to a reduction of his assessment, before the expiration of the four years for which the assessment was made, in the absence of any destruction of the property or any portion of it. We think the two Acts under review were made expressly to deny such right.
Judgment affirmed.